■ ABDO M. ALSHAWHATI, Also Known as ABDO MOSLEM AL SHOHATEE, Appellant, v ABDULAQADAR A. ZANDANI, Also Known as ABDULKADER ADBO ZANDANI and Another, et al., Respondents, et al., Defendant. [918 NYS2d 173]—

On August 10, 1988, the plaintiff and the defendant Abdulaqadar A. Zandani, also known as Abdulkader Adbo Zandani, also known as Abdo Alzandani (hereinafter Zandani), purchased real property located at 890 Rockaway Avenue in Brooklyn (hereinafter the subject property), as tenants in common. The subject property contained a building consisting of 10 residential apartments and two commercial storefronts. The plaintiff, Zandani, and the defendant Hassan Ali Hugran, also known as Hassan Ali Hujran (hereinafter Hugran) (Zandani and Hugran hereinafter together the respondents), operated a grocery store out of one of the storefronts.

In August 2007, the plaintiff commenced this action against Zandani, Hugran, and 890 Rockaway Food Corp. alleging, inter alia, that the respondents refused him access to the grocery store in violation of their agreement concerning the operation of the store, and created the defendant 890 Rockaway Food Corp. without his knowledge or consent. Among the 18 causes of action pleaded, the plaintiff sought the partition and sale of the subject property.

After the plaintiff filed his note of issue, the plaintiff and the respondents entered into a stipulation of settlement on February 2, 2010, while in court. According to the terms of the stipulation, the parties agreed that, on February 19, 2010, the plaintiff would purchase Zandani's 50% interest in the subject property for the sum of $1,000,000, of which the sum of $600,000 was to be in cash and the remaining $400,000 was to be held in the form of a purchase money noninterest bearing mortgage payable within 16 months from the date of closing. The respondents would then enter into a separate settlement agreement resolving Hugran's interest in the subject property.

The terms of the stipulation were placed on the record. While on the record, through the assistance of an Arabic interpreter, the Supreme Court confirmed that the plaintiff and the respondents accepted the terms of the stipulation and understood that they would now be bound by its terms by questioning each one of them under oath.

The plaintiff failed to appear for the closing on February 19, 2010. The respondents moved, inter alia, to enforce the stipula-

tion and to enter judgment in their favor, or to appoint a referee to immediately sell the subject property at auction. The plaintiff opposed the motion on the ground that Zandani's share of the subject property was not worth $1,000,000 as he had been led to believe by Zandani, who allegedly assured the plaintiff for years that the subject property was worth several million dollars. The Supreme Court, inter alia, granted those branches of the respondents' motion which were to enforce the stipulation and to appoint a referee to sell the subject property at auction.

"A stipulation of settlement is a contract, enforceable according to its terms" (*McKenzie v Vintage Hallmark*, 302 AD2d 503, 504 [2003]; *see Vider v Vider*, 46 AD3d 673, 674 [2007]; *Fukilman v 31st Ave. Realty Corp.*, 39 AD3d 812, 813 [2007]). When a court enforces a stipulation of settlement, it must effectuate the parties' intent (*see Vider v Vider*, 46 AD3d at 674; *Fukilman v 31st Ave. Realty Corp.*, 39 AD3d at 813). As with any contract, where the terms of a stipulation of settlement are unambiguous, the Supreme Court must give effect to the parties' intent based upon the plain meaning of the words used by the parties (*see Teitelbaum Holdings v Gold*, 48 NY2d 51, 56 [1979]; *Vider v Vider*, 46 AD3d at 674; *Fukilman v 31st Ave. Realty Corp.*, 39 AD3d at 813; *see also Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; *Johnston v MGM Emerald Enters., Inc.*, 69 AD3d 674, 677 [2010]; *Henrich v Phazar Antenna Corp.*, 33 AD3d 864 [2006]).

Here, the plaintiff clearly failed to comply with the terms of the valid stipulation, which required him to purchase Zandani's 50% interest in the subject property for the sum of $1,000,000 on February 19, 2010. Therefore, the Supreme Court properly granted that branch of the respondents' motion which was to enforce the stipulation.

The Supreme Court erred in granting that branch of the respondents' motion which was to appoint a referee to sell the subject property at public auction. The terms of the stipulation were unambiguous. Accordingly, the Supreme Court was required to give effect to those terms and not include additional terms. The stipulation, as set forth by the parties on the record, did not contain any provision requiring that the subject property be sold at auction in the event of a default. Thus, the Supreme Court should not have granted that relief (*see Hallock v State of New York*, 64 NY2d 224 [1984]; *Teitelbaum Holdings v Gold*, 48 NY2d at 54; *Markovits v Mitrany*, 12 AD3d 574, 574 [2004]; *M & B Equities v Parkway Gardens Owners*, 286 AD2d 755, 756 [2001]; *see also Ramnarain v Ramnarain*, 7 AD3d 600, 601 [2004]).

Accordingly, we remit the matter to the Supreme Court, Kings County, to enforce the terms of the stipulation and to vacate the sale of the subject property at public auction by the referee. Angiolillo, J.P., Florio, Belen and Austin, JJ., concur.